**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
　　　　Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **DANIEL COBB,** | Case No. 3:21-cv-416 |
| **PLAINTIFF**, | **COMPLAINT** |
| v. | UNLAWFUL EMPLOYMENT ACTION |
| | (Or. Rev. Stat. § 659A.030 & 659A.199 – |
| **INTEL CORPORATION**, | Age Discrimination, Retaliation & |
| | Whistleblowing – Diversity jurisdiction) |
| **DEFENDANT**. | |
| | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.　　　Plaintiff brings this action to remedy violations of plaintiff's statutory rights under Or. Rev. Stat. §§ 659A.030 and 659A.199. Plaintiff seeks economic and non-economic damages, equitable relief, as well as attorneys' fees and costs.

PAGE 1 – COMPLAINT

## JURISDICTION

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1332.

3.      All preconditions to jurisdiction pursuant to 42 U.S.C. § 2000e-5 have been satisfied. On January 6, 2020, Plaintiff filed a charge of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries (BOLI), case number AGEMAG200106-10020, for violation of Or. Rev. Stat. § 659A.030. BOLI co-filed a charge with the Equal Employment Opportunity Commission (EEOC), charge number 38D-2020-00318C. On January 6, 2021, BOLI issued Plaintiff a right to sue letter for case number AGEMAG200106-10020. On January 11, 2021, the EEOC issued Plaintiff a right to sue letter for charge number 38D-2020-00318C.

4.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

## PARTIES

5.      Plaintiff Daniel Cobb is a resident of Oregon. At all times material, plaintiff worked for defendant in Washington County, Oregon.

6.      Defendant Intel Corporation is a Delaware corporation, registered to do business in Oregon. Defendant does regular and sustained business in Oregon, including Washington County, Oregon.

7.      At all times relevant, defendant's employees and supervisors as their conduct is alleged herein acted within the course and scope of their employment with the defendant.

## GENERAL FACTUAL ALLEGATIONS

8.       On July 1, 2000, Cobb began working for Intel as a senior technical writer/instructional designer.

9.      In 2017, Keith Mahoney became Cobb's direct manager. After becoming his

**Law Offices of Daniel Snyder**
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

direct manager, Mahoney excluded Cobb from all DLS project team planning, and status meetings. Mahoney also excluded Cobb from team offsite meetings in Poland and California. No other members of the DLS project team were excluded from these meetings.

10.    From May 2018 to July 2018, Mahoney brought up the subject of retirement to Cobb three times in person. On all three occasions, Mahoney asked Cobb how old Cobb was, whether Cobb was vested yet, and when Cobb planned to retire. On all three occasions, Cobb replied that he was not planning on retiring for some time. During this same time period, Mahoney on multiple occasions asked Cobb if he dyed his hair.

11.    When it was clear that Cobb was not going to be pushed out voluntarily, Mahoney made several false claims of misbehavior during this period. Mahoney threatened Cobb with possible disciplinary action for demonstrably false or meritless reasons.

12.    Mahoney intentionally sabotaged Cobb's workflow by demanding that Cobb delete all software training videos he had made that were essential to his work for the team. Mahoney insisted that if Cobb did not delete them, he could be fired on the spot. This was false but out of fear of retaliation, Cobb deleted them. A few days later, Intel legal informed them that the videos were legal and did not need to be deleted. I lost valuable technical information essential to my work, which slowed my progress.

13.    On August 6, 2018, Cobb met with Mahoney. In this meeting, Mahoney was pointlessly confrontational with Cobb. He was angry and told Cobb that there were complaints about my writing. Cobb asked Mahoney for specifics, but he had none. Cobb then told Mahoney if he could not provide specifics about the complaints, he would ask for guidance from Human Resources (HR). Mahoney became infuriated and told Cobb he was trending toward an "Improvement Required or Corrective Action Plan (CAP)." He then suggested that Cobb take a leave of absence to deal with any problems or disabilities.

PAGE 3 – COMPLAINT

14.     On August 7, 2018, Cobb received an email from Mahoney that included resources for taking a leave of absence, the Employee Assistance Program, and the ADA Accommodation Team. Cobb was confused and insulted by the implication that he needed assistance or accommodation for his age. Cobb had not disclosed a disability or requested an accommodation.

15.     On August 8, 2018, Cobb received another email from Mahoney. In this email, Mahoney reiterated the available resources he had mentioned in his August 7, 2018, email to Cobb and then told him he personally could have an ADA case manager contact Cobb.

16.     On August 21, 2018, Cobb filed a complaint with HR about Mahoney's conduct.

17.     In September 2018, Mahoney falsely accused Cobb of not delivering his DLS Alpha work product on time. This is demonstrably false.

18.     In September 2018, Mahoney, ironically, took credit for the work Cobb's DLS Alpha work product, and intentionally excluded Cobb from receiving a Division Recognition Award that he and the group received as a result.

19.     On October 31, 2018, Mahoney issued Cobb the CAP. Mahoney falsely accused Cobb of the following: not following guidelines in the documentation he produced; producing documentation with errors in grammar, typos, and missing information; and not delivering work product to the customer. These claims have no factual basis (and the documents according to Mahoney were only supposed to be 80% complete at that time). Mahoney also encouraged Cobb to quit working at Intel rather than to try and correct the work performance issues that he raised in the CAP.

20.     After receiving the CAP, Intel offered Cobb a severance package. Mahoney encouraged Cobb to accept the severance package and quit working for Intel, before the window closed. Cobb did not accept the severance package.

**Law Offices of Daniel Snyder**
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

21.     On November 14, 2018, Mahoney left for a 27-day vacation. Mahoney informed Cobb on November 7, 2018, that Cobb would be responsible for performing Mahoney's work (formalizing and publishing his DLS Installation Guide in time for an upcoming project release, as well as Cobb's). This was in addition to Cobb's own work publishing my DLS User Guide and requirements to satisfy the CAP.

22.     That week and weekend Cobb worked approximately 70 hours to complete all of this work. On December 3, 2018, Cobb successfully delivered Mahoney's publication and his own DLS User Guide to the project team. Cobb received an email from Mark Robins, Mahoney's manager, thanking him.

23.     From December 2018 to January 25, 2019, Cobb worked on the Nauta Project. This project ended with the group, including Cobb, receiving an award from a higher-level manager.

24.     On December 31, 2019, Cobb's CAP should have closed, but it remained open for a month longer.

25.     In January 2019, thinking his CAP must be closed, Cobb applied for a different position at Intel in the Advanced Technology Manufacturing Group (ATMG). Cobb interviewed with five different engineering managers. By late January, an internal online query showed that forty-seven people applied for this position, and they had interviewed only one person - Cobb. The hiring manager indicated they would make a hiring decision the following week.

26.     In February 2019, Cobb took a private meeting with his Operations Manager to ask if she could intervene to close the CAP so he could take the new position. A couple days later, Mahoney declared that Cobb had not met the requirements of the CAP (which was false) and ended Cobb's employment.

27.     Two months after his employment termination, the ATMG Cobb interviewed with

PAGE 5 – COMPLAINT

at Intel tracked him down, asked him what happened, and inquired whether he was still available to work. The hiring manager of the ATMG told Cobb they had not found anyone as qualified as he was. Cobb explained what had happened. They invited Cobb to Ronler Acres 4 for more extensive interviews, with the apparent hope that Intel could hire him back. Cobb spoke to the Legal department at Intel, who told him he could not be hired back.

## FIRST CLAIM FOR RELIEF

### (ORS Chapter 659A.030 – Age Discrimination and Retaliation)

28.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

29.     Defendant discriminated against Plaintiff on the basis of his age, as alleged herein.

30.     Defendant retaliated against Plaintiff for reporting and complaining of age discrimination, as alleged herein.

31.     Defendant's conduct constitutes an unlawful employment practice in the terms and conditions of Plaintiff's employment in violation of ORS 659A.030 and caused Plaintiff economic and non-economic damages.

32.     As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

33.     Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

34.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair

PAGE 6 – COMPLAINT

by a jury.

35.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

36.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

37.     Pursuant to Or. Rev. Stat. §§ 659A.885 and 20.107, Plaintiff is entitled to recover his reasonable attorney fees and costs, including expert witness fees.

38.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SECOND CLAIM FOR RELIEF

### (ORS Chapter 659A.199 – Whistleblower)

39.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

40.     Plaintiff reported to Defendant conduct that Plaintiff believed was evidence of a violation of state or federal law, rule, or regulation.

41.     Defendant discriminated and retaliated against Plaintiff because of the report Plaintiff made.  Defendant's actions violated ORS 659A.199, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

42.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

43.     Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation. If reinstatement is not appropriate, then Plaintiff is entitled

**Law Offices of Daniel Snyder**
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury. Plaintiff is entitled to a declaration that the conduct of the Defendant violated ORS 659A.199.

44.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

45.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

46.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

47.     Pursuant to Or. Rev. Stat. §§ 659A.885 and 20.107, the Plaintiff is entitled to recover his reasonable attorney fees and costs, including expert witness fees.

48.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against defendant:

1.     A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

2.     A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

**Law Offices of Daniel Snyder**
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

3.      Equitable relief, including but not limited to, reinstatement if Plaintiff so chooses;

4.      Punitive damages;

5.      Plaintiff's costs and disbursements incurred herein;

6.      Plaintiff's attorney fees; and

7.      For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: March 18, 2021

> **Law Offices of Daniel Snyder**
>
> *s/ John David Burgess*
> Daniel Snyder, OSB No. 783856
> dansnyder@lawofficeofdanielsnyder.com
> Carl Post, OSB No. 06105
> carlpost@lawofficeofdanielsnyder.com
> John David Burgess, OSB 106498
> johnburgess@lawofficeofdanielsnyder.com
> Tel: (503) 241-3617 / Fax: (503) 241-2249
> Of Attorneys for Plaintiff

PAGE 9 – COMPLAINT